JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

William Johnson

**DEFENDANTS** Marirosa Lamas, District Attorney of Philadelphia, Attorney General of Pennsylvania

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) 215 925 4400
Kairys Rudovsky Messing & Feinberg
718 Arch St., Ste 501S, Phila. PA 19106

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☑ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 2254

Brief description of cause:
Habeas Corpus Challenging vk to Conviction

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE July 30, 2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Johnson

v.

Lamas, et al

:
:
:
:
:

CIVIL ACTION

NO. **12   5156**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                ( 2254 )(x )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                        (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                               (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                  (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       (  )


_____9/10/12_____          _____          _____
**Date**                   **Deputy Clerk**        **Attorney for**


_____          _____          _____
**Telephone**              **FAX Number**           **E-Mail Address**


(Civ. 660) 10/02



# UNITED STATES DISTRICT COURT

**12    5156**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _Po Box A, Bellefonte, PA 16823_

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____ _Philadelphia_

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes ☐    No ☐

Does this case involve multidistrict litigation possibilities?    Yes ☐    No ☐

**RELATED CASE, IF ANY:**

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐    No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐    No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐    No ☐

CIVIL: (Place ✓ in ONE CATEGORY ONLY.)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☑ Habeas Corpus _(2254)_
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____    _____    _____
                      Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **SEP 1 0 2012**    _____    _____
                          Deputy Clerk            Attorney I.D.#

CIV. 609 (6/08)



# PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Pennsylvania |
|---|---|
| **Name (under which you were convicted):** William Johnson | **Docket or Case No.:** 12 5156 |
| **Place of Confinement:** SCI Rockview | **Prisoner No.:** JD5940 |
| **Petitioner** (Include the name under which you were convicted): William Johnson | **Respondent** (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner): Marirosa Lamas <br> and <br> The District Attorney of the County of: Philadelphia <br> and <br> The Attorney General of the State of: Pennsylvania |

v.

## PETITION

1.  (a)  Name and location of court that entered the judgment of conviction you are challenging:
    Court of Common Pleas, Philadelphia County

    (b)  Criminal docket or case number (if you know): CP-51-CR-1202272-2005

2.  (a)  Date of judgment of conviction (if you know): June 3, 2009

    (b)  Date of sentencing: August 6, 2009

3.  Length of sentence: 30-60 years

4.  In this case, were you convicted on more than one count or of more than one crime?  ☒ Yes  ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: Third Degree Murder; Conspiracy

_____

_____

_____

6.    (a)    What was your plea?  (Check one)

    ☒ (1)    Not Guilty    ☐ (3)    Nolo contendere (no contest)

    ☐ (2)    Guilty    ☐ (4)    Insanity plea

    (b)    If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

_____

_____

_____

_____

    (c)    If you went to trial, what kind of trial did you have?  (Check one)

    ☒    Jury    ☐    Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☐    Yes    ☒    No

8.    Did you appeal from the judgment of conviction?

    ☒    Yes    ☐    No

9.    If you did appeal, answer the following:

    (a)    Name of court:  __Superior Court of Pennsylvania__

    (b)    Docket or case number (if you know): No. 3675 EDA 2009

    (c)    Result:  __Judgment Affirmed__

    (d)    Date of result (if you know):  April 1, 2011

    (e)    Citation to the case (if you know): __

    (f)    Grounds raised: _1. Due Process violation resulting from compelling witness to invoke Fifth Amendment rights before jury;_

2. Denial of Constitutional Rights; Confrontation Clause Violation
3. Due Process violation by introduction of evidence implicating (falsely) defendant in threats to a witness;
4. Prejudicial errors mandate a new trial.

(g)    Did you seek further review by a higher state court?    ☒ Yes    ☐ No

If yes, answer the following:

(1) Name of court: __Pennsylvania Supreme Court__

(2) Docket or case number (if you know): __405 EAL 2011__

(3) Result: __Petition for Allowance of Appeal Denied__

(4) Date of result (if you know): __May 16, 2012__

(5) Citation to the case (if you know): _____

(6) Grounds raised: __Same as in Superior Court__

_____

_____

_____

_____


(h)    Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____


10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☐ Yes    ☒ No


11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐    Yes        ☐    No

(7) Result: _____

(8) Date of result (if you know): _____

(b)      If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐    Yes        ☐    No

(7) Result: _____

(8) Date of result (if you know): _____

(c)      If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes              ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d)     Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

(1)     First petition:        ☐ Yes              ☐ No

(2)     Second petition:    ☐ Yes              ☐ No

(3)     Third petition:       ☐ Yes              ☐ No

(e)     If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** Denial of due process of law by the Prosecution's deliberate elicitation of Co-defendant's Fifth Amendment Rights before jury.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Memorandum of Law, attached

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☒   Yes        ☐   No

    (2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐   Yes        ☒   No

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion or petition?    ☐  Yes    ☐  No

    (4) Did you appeal from the denial of your motion or petition?    ☐  Yes    ☐  No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        ☐   Yes        ☐   No

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____ ___

_____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise

this issue: _____

_____

_____

_____

_____

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.)  that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** _Denial of Sixth Amendment Right to Confrontation of_
Witnesses

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See Memorandum of Law, attached

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____ _____

_____

_____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☒  Yes          ☐  No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

### (d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐    Yes        ☒   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?     ☐   Yes    ☐   No

(4) Did you appeal from the denial of your motion or petition?    ☐   Yes    ☐   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐    Yes        ☐   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** Denial of Due Process of Law by introduction of evidence falsely implicating Petitioner with threats to a witness

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Memorandum of Law, attached

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐   Yes                    ☑   No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐   Yes          ☐   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _ _____

Name and location of the court where the motion or petition was filed: _____ _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?    ☐   Yes    ☐   No

(4) Did you appeal from the denial of your motion or petition?    ☐   Yes    ☐   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

     ☐   Yes       ☐   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____ _____ _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise
this issue: _____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** ____ N/A _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

**(c) Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☐   Yes        ☐   No

    (2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

**(d) Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐   Yes        ☐   No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

    (3) Did you receive a hearing on your motion or petition?    ☐  Yes    ☐  No

    (4) Did you appeal from the denial of your motion or petition?    ☐  Yes    ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☑ Yes ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

(b)     Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?     ☐  Yes     ☑  No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     ☐  Yes     ☑  No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: _____

_____

_____

_____

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)     At preliminary hearing:  Nino Tinari, Esq., 123 S. Broad St., Suite 1970, Philadelphia, PA 19109

(b)     At arraignment and plea: Nino Tinari, Esq., 123 S. Broad St., Suite 1970, Philadelphia, PA 19109

    (c)    At trial: Nino Tinari, Esq., 123 S. Broad Street., Suite 1970, Philadelphia, PA 19109

    (d)    At sentencing: Nino Tinari, Esq., 123 S. Broad St., Suite 1970, Philadelphia, PA 19109

    (e)    On appeal: David Rudovsky, Esq., 718 Arch St., Suite 501S, Philadelphia, PA 19106

    (f)    In any post-conviction proceeding: N/A

    (g)    On appeal from any ruling against you in a post-conviction proceeding:

    N/A

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    ☐ Yes    ☑ No

    (a)    If so, give the name and location of the court that imposed the other sentence you will serve in the future:

    (b)    Give the date the other sentence was imposed:

    (c)    Give the length of the other sentence:

    (d)    Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    ☐ Yes    ☐ No

18.    **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

_____

_____

_____

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of –

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:     Grant Petition
     for Writ of Habeas Corpus and order a new trial.

_____

_____

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM JOHNSON, | : | C.A. No._____ |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| MARIROSA LAMAS, SUPERINTENDENT, | : | |
| SCI ROCKVIEW, | : | |
| Respondent | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

### A. Introduction

Petitioner, William Johnson, was convicted at a second trial (after a jury acquitted him of

first degree murder and were divided on the charge of third degree murder) of third degree

murder and criminal conspiracy. As we discuss in detail below, the trial was fundamentally

unfair in several respects, including the introduction of inadmissible hearsay statements of Mr.

Johnson's co-defendant. Post-trial, the court agreed that Johnson's constitutional rights to

confrontation were violated by the admission of these hearsay statements, but sustained the

conviction on the ground that this error was "harmless." The Superior Court of Pennsylvania

affirmed on this ground and the Supreme Court of Pennsylvania denied a Petition for Allowance

of Appeal.

The decision of the Superior Court ignores every significant factor on the issue of

prejudice, including the fact that the improperly admitted evidence was central to the

Commonwealth's case and that in a previous trial where this evidence was not introduced, there

was a hung jury. The Court also failed to recognize the separate and additional prejudice caused

1

by the Commonwealth's misconduct in calling the co-defendant to the stand, where he had made clear that he would not testify and would (and did) invoke his Fifth Amendment rights, and the prosecutor's false suggestion that Mr. Johnson had threatened a witness.

It is settled law that this Court must grant the writ if it finds that the constitutional errors at trial had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619 (1993). Under this harmless error standard, no further deference is given to the state court's determination. Fry v. Piller, 551 U.S. 112 (2007); Wood v. Ercole, 644 F.3d 83, 94, n.9 (2d Cir. 2011).

### B. Procedural History

William Johnson, and his co-defendant, Mumin Slaughter, were arrested and charged with the August 26, 2005 murder of Terrence Flomo, an off-duty police officer who was in the area of Cecil B. Moore Avenue and 20th Street in North Philadelphia at 2 a.m., attempting to pick up a prostitute. The prosecution's theory at trial was that Brenda Bowens, a prostitute who was approached by Mr. Flomo, told the defendants of this event. Thereafter, according to the Commonwealth, the defendants shot and killed Mr. Flomo as he sat in his car.

At the first trial in 2007, the Commonwealth relied primarily on the testimony of Brenda Bowens and another prostitute, Nora Williams, who were on the streets at the time of the killing. While both testified that they saw the defendants at the decedent's car at the time of the shooting, they were impeached by their prior inconsistent statements, physical evidence, their long term drug addiction, and their criminal records. *There was no other evidence that linked Mr. Johnson to the crime.*

The jury acquitted both defendants of first degree murder. The co-defendant was

2

convicted of third degree murder, but a mistrial was declared when the jury could not reach a verdict as to the third degree murder charges against Mr. Johnson.

At the retrial, the Commonwealth's case was a duplicate of the first trial, with one major exception. The prosecution, knowing that its case had been too weak to secure a guilty verdict in the first trial, made a deal with Slaughter for his testimony. At the second trial, when Slaughter refused to testify, the court, at the urging of the prosecutor, not only compelled Slaughter to invoke his Fifth Amendment rights before the jury, but also admitted his hearsay statements. As noted, post-trial, the court determined that this evidence was admitted in violation of Johnson's confrontation rights, but found the error to be harmless. The Superior Court of Pennsylvania affirmed on this ground, and on May 16, 2012, the Supreme Court denied a Petition for Allowance of Appeal.

### C. Factual History

At trial, the Commonwealth presented background evidence as to the killing of Mr. Flomo, including testimony as to the location of his car, forensic evidence as to the cause of death and bullet locations, initial descriptions of the perpetrators, and certain physical evidence recovered by the police. None of this testimony linked Johnson (or his co-defendant) to the shooting.

The Commonwealth then presented the testimony of two supposed eyewitnesses, Brenda Bowens and Nora Williams. Ms. Bowens testified that she was working as a prostitute that night, had finished with a customer, and was walking to a house where she intended to get high, when Mr. Flomo called to her from his car. N.T. May 28, 204-206. She rejected his solicitation and then told the defendants that the victim had tried to pick her up. N.T. May 28, 207. Soon

thereafter, she saw the defendants at Flomo's car, with the Johnson at the passenger side, and heard gun shots. N.T. May 28, 208-210.

There was powerful impeachment of this testimony. First, on two occasions when she was interviewed by detectives, Ms. Bowens denied knowing anything about the shooting. N.T. May 28, 217-219; 238. She attempted to explain this conduct by asserting that she felt threatened in the neighborhood, though the prosecutor assured the court that Mr. Johnson was not connected to any threats. N.T. May 28, 218-220. Second, Ms. Bowens was a long time cocaine addict with a "severe drug habit," who was using crack cocaine "almost every day," N.T. May 28, 231, and that night was anxious to get high after turning a trick in the neighborhood. N.T. May 28, 202-203. She admitted that the use of drugs and alcohol would cause her "to have some distortions in . . . observations." N.T. May 28, 236. She also had prior convictions that were introduced to impeach her credibility, and she was on probation at the time of her statement with a bench warrant that had issued for her arrest. N.T. May 28, 237-238.

Third, and of particular relevance, Ms. Bowens testified that she only had a glancing, mini-second view of the crime, from a considerable distance. She was at least 300 feet, and as much as 600 feet from the car when she made her observations. N.T. June 2, 161, 209 (arguments whether she was 600 or 300 feet away). Further, although she was a fully cooperative witness for the prosecution, *she stated that she could not even be sure that it was Mr. Johnson who was at the car at the time of the shooting.* N.T. 5/29 22-23; 45. Finally, her testimony was directly contradicted by forensics evidence (as to the proximity of shooter to the victim) and weakened by the factors of time, place and observation of the event. N.T. May 28, 263; May 29, 16-18.

Nora Williams also testified that she was a prostitute and drug addict and that she was high that night. N.T. May 29, 51-52; 97. Ms. Williams used *50 bags* of cocaine a day. N.T. May 29, 102. She testified that she observed the defendants run to the victim's car and start shooting, but could see this only by a "glance" and in a "mini-second." N.T. May 29, 113. After the incident she was questioned by detectives and first stated that she knew nothing about the shooting. N.T. May 29, 65. Further, she had open charges and a bench warrant at the time of the incident and her questioning by detectives. May 29, 98; 104-105.

The Commonwealth presented testimony from David Kelley and Anthony Bennett who stated that they saw the *co-defendant Slaughter* on the street that night. Bennett saw him just around the time of the shooting with a "bulge" in his pocket; he had also seen Slaughter previously with a gun. Neither witness had seen Mr. Johnson in the neighborhood that night.

The defense presented testimony from eyewitness Debra Bryant that she saw the shooting and that neither Johnson nor Slaughter were the perpetrators. N.T. June 2, 95-130.

Following the first trial, co-defendant Slaughter was sentenced on his third degree murder conviction. Before the second trial, there were discussions between Slaughter's lawyer and the prosecution and it was agreed that the sentence would be vacated if he gave a statement concerning Johnson's alleged involvement in the shooting. Slaughter gave a statement implicating Johnson and his sentence was vacated pending the new trial.

At trial, however, the prosecutor informed the court that Slaughter was refusing to come to court to testify. N.T. May 29, 135. The trial court, without consulting counsel for Slaughter, erroneously stated that he would not have a Fifth Amendment claim. Id. At this point, counsel for Mr. Johnson specifically argued that any inquiries into Slaughter's willingness to testify be

outside the presence of the jury. Id. 135-36; 138. The court denied the request and permitted the jury to hear Slaughter's refusal to testify. Id. 138-39. Slaughter refused to testify as to any matter of substance and asserted his Fifth Amendment rights. Id. 139-141. The prosecutor, over defense objection, id. 143, then showed Slaughter the statement he had allegedly given to a detective, but he still refused to testify, including a refusal to say if he had signed the statement. Id. 143-46.

At this point, the court summoned Slaughter's lawyer who reported to the court that his client claimed that the statement was given only to encourage Mr. Johnson to take a negotiated plea, that his accusations against Johnson were false, and that he would not testify. N.T. June 1, 4-7. Thus, the parties and the trial court were again on specific notice that Slaughter would refuse to answer *any* questions regarding the incident. Nevertheless, and quite inexplicably, the court permitted the prosecutor to re-call Slaughter, who refused to testify as to anything of substance regarding the incident in question. Id. 11-16.

In a further attempt to coerce Slaughter's testimony, the court agreed to the prosecutor's request to suspend the trial proceedings and to move to a sentencing hearing for Slaughter. Id. 17. At the sentencing hearing (*at which Johnson was not represented and could not question Slaughter*), Slaughter refused to answer any questions as to the substance of the statement he allegedly gave to the detective; all he would say is that he signed the statement. Sentencing N.T. June 1, 8. As the court prepared to go back to the trial of Mr. Johnson, Slaughter again stated that he would not testify (indeed, that he was unwilling even to take the stand) and his lawyer confirmed that if again called as a witness, Slaughter would refuse to testify. Id. 10-11.

Counsel for Johnson moved for a mistrial, N.T. June 1, 22, and again asserted error in

6

having Slaughter called to the stand when the court and prosecutor knew he would not testify. Id. 22-26. Defense counsel also argued that he had no way to cross-examine Slaughter and that use of his hearsay statements at sentencing or to the detective would deny Johnson his rights to confrontation. Id. 31-34. The trial court denied these motions.

With the jury present, Slaughter was asked by the prosecutor whether he gave a statement to a detective, whether he sold drugs, and other questions about the incident. Slaughter again refused to respond; indeed, he expressly stated that he would not answer questions "from him [the prosecutor], his defense, or you [the court]." Id. 36. Over objection and another motion for a mistrial, id., the prosecutor was then permitted to show Slaughter's alleged statement to the detective by way of a large screen in the courtroom. Id. 37-38. When the prosecutor posed questions about the statement, Slaughter, now agitated and cursing, refused to respond. Id. 38-42. At this point, the prosecutor questioned Slaughter about his testimony at the sentencing hearing (in which Slaughter had talked about putting together a "freaking statement" to help himself and how he was being railroaded). Id. 42. Finally, the jury was excused and Slaughter was asked whether he would answer questions from the defense attorney. Slaughter made clear that he would not. Defense counsel asked several questions which Slaughter refused to answer, including questions as to whether Slaughter knew Mr. Johnson or anything about the case. Id. 51-54.

Slaughter also refused to answer questions from the court. Id. 53-54. On redirect examination, when the prosecutor showed Slaughter the transcript from his sentencing hearing, he refused to answer any questions. At this point, on the ground that Slaughter (but not Mr. Johnson) was trying to "subvert justice," id. 57, the court permitted the detective who allegedly

took the statement from Slaughter to testify as to its contents. Id. 66-71. Finally, the court permitted the Commonwealth to introduce into evidence the sentencing transcript in which the statement to the detective implicating Mr. Johnson was part of the record. N.T. June 2, 76-85. In this regard, the jury heard the trial judge's assertion that Slaughter was "trying to undermine the truth-seeking process of the Commonwealth trying to bring some justice . . ." Id. 84.

**ARGUMENT**

I.     **Petitioner's Right to Confrontation of Witnesses and a Fair Trial Were Violated by the Commonwealth's Deliberate Elicitation of Co-defendant's Assertion of the Fifth Amendment Before the Jury and by the Repeated Introduction into Evidence of the Co-Defendant's Hearsay Accusations**

The circumstances under which the trial court permitted the Commonwealth to present to the jury the hearsay statements of the co-defendant Slaughter established several related violations of Mr. Johnson's right to confrontation of witnesses and to a fair trial. The state courts conceded that there was a constitutional error in the admission of hearsay statements, but the opinion of the Superior Court fails to acknowledge the scope and depth of the violations that occurred with respect to the witness Slaughter. The errors were so substantial, pervasive, and prejudicial as to mandate a new trial.

    A.  The Constitutional Violations

The trial court committed two serious constitutional errors in its rulings on the admissibility of the statements of the co-defendant. First, the court erred in permitting the Commonwealth to repeatedly call the co-defendant before the jury when the prosecutor knew that he would assert his privilege not to testify. Second, the admission of these hearsay statements caused a constitutional violation of Johnson's right to confrontation of witnesses under the United States Constitution.

    1.  The Calling of the Co-defendant Who had Stated His Intent to Assert Fifth Amendment Rights and Refuse to Testify Deprived Johnson of a Fair Trial

It is well settled that a prosecutor may not call to the stand a witness whom the prosecutor knows or has reason to know will invoke his Fifth Amendment rights, as this will inevitably lead the jury to assume wrongdoing by the defendant by "the innuendo of guilt by association." See

9

Namet v. United States, 373 U.S. 179 (1961). As the First Circuit has explained, "This is so for the simple reason that the refusal of a witness to answer a specific question, particularly in the context of cross-examination, could lead a jury to draw impermissible inferences from which neither side has a right to benefit." United States v. Victor, 973 F.2d 975, 979 (1st Cir. 1992). See also, Commonwealth v. Sims, 521 A.2d 391, 396 (Pa. 1987); Commonwealth v. Wright, 321 A.2d 625 (Pa. 1974)(citing previous cases where Court "held that it is reversible error for the prosecution, once informed of a witness' intention to claim a privilege against self-incrimination, to call that witness . . . where the witness is likely to be thought by the jury to be associated with the defendant in the incident . . .").

There is overwhelming evidence that the prosecutor and the court knew that the co-defendant would not testify and that he would claim a Fifth Amendment privilege. When the prosecutor informed the court that Slaughter was refusing to come to court to testify, N.T. May 29, 135, defense counsel's request that the court to determine whether Slaughter would testify was denied. True to his stated intent, and in front of the jury, Slaughter refused to testify on Fifth Amendment grounds. Id. 140-42. Over defense objection, the prosecutor in a highly improper and deliberate attempt to prejudice Mr. Johnson, stated that Slaughter had been convicted of murder and had moved to vacate his sentence and "cooperate" with the prosecution. Id. 140. The prosecutor then showed Slaughter the statement he had allegedly given to a detective, but Slaughter still refused to testify. Id. 140-145 .

At this juncture, Slaughter's counsel, William Cannon, Esquire, was summoned, and he informed the court that his client would not testify. N.T. June 1, 4-7. Accordingly, all parties were again on notice that Slaughter would refuse to answer any questions and would assert his

Fifth Amendment rights. Nevertheless, the court permitted the prosecutor to re-call Slaughter (again improperly rejecting his Fifth Amendment claim not to testify), but he continued to refuse to testify as to anything of substance. Id. 4-16.

In yet another reprise of this highly prejudicial process, after Slaughter was sentenced and he and his counsel again stated that he would not testify, the trial court ordered Slaughter to repeat before the jury his refusal to answer any questions about the incident. The resulting exchange between the prosecutor and the witness was even more damaging and prejudicial. Slaughter was asked by the prosecutor whether he gave a statement to a detective, whether he sold drugs, and other questions about the incident, but he refused to respond. The prosecutor then showed on a large screen Slaughter's alleged statement to the detective. N.T. June 1, 37-38. When the prosecutor posed questions about the statement, Slaughter, now agitated and cursing, refused to respond. Id. 38-45. At this point, the prosecutor questioned Slaughter about his testimony at sentencing, a proceeding at which Slaughter had talked about putting together a "freaking statement" to help himself. Id. 42.

Finally, in a statement that made clear to the jury that Mr. Slaughter was intentionally witholding evidence of Ms. Johnson's guilt, the court asserted that Slaughter was "trying to undermine the truth-seeking process of the Commonwealth trying to bring some justice. . ." N.T. June 2, 84.

The serious concerns expressed by the courts as to the prejudice that would result in calling a witness who will assert a privilege or otherwise refuse to testify was doubly manifest in this case. Here, the jury knew that Slaughter was a convicted co-defendant and, therefore, was being called to the stand by the prosecutor to implicate him in the crime. His refusal to testify

11

could only be taken by the jury (as the court stated) as an attempt by a convicted murderer to shield his co-defendant, thereby proving guilt by association. In the face of this consistent refusal to testify, the prosecutor, with the clear intent of showing the jury what he wanted Slaughter to say, exhibited the statement to the jury, had a detective testify as to Slaughter's statements, introduced and Slaughter's testimony (at his own sentencing) all of which directly implicated Mr. Johnson in the shooting. Absent, of course, was the opportunity for the basic constitutional right to confrontation.

The Superior Court found no error in the intentional calling of a witness who would assert his Fifth Amendment privilege, on the plainly erroneous ground (not even argued by the Commonwealth) that the prosecutor and court were "operating under the mistaken belief that Slaughter had no Fifth Amendment privilege." Opinion, at 11.[1] But there is *no* evidence that the experienced prosecutor did not know the settled law, and the trial court was plainly mistaken in permitting the prosecutor to proceed in this fashion.

More important, it is entirely irrelevant *why* the prosecutor or court permitted the witness to assert his Fifth Amendment privilege before the jury. The only pertinent question is whether the prosecutor had any reason to believe that the witness would invoke the privilege, and here that fact is undisputed. Quite evidently, the harm to the defendant is precisely the same whether or not the witness has a legal ground for refusing to testify. Whether the claim of privilege is valid must be resolved outside the presence of the jury, and even if the trial court overrules the

---

[1]The Superior Court had previously recognized the long established rule "that a witness whose conviction has not been finalized on direct appeal [may] invoke the privilege of self-incrimination and refuse to testify about the subject matter which formed the basis of his conviction." Commonwealth v. Rogers, 372 A.2d 771, 780 (Pa. 1977). The Superior Court ruled that the trial court erred in holding otherwise. Opinion, at 11, n.10.

assertion of the privilege, settled law established that it is error to call the witness who will still insist on refusing to testify. United States v. Coppola, 479 F.2d 1160 (10th Cir. 1973)(calling before a jury a witness who wrongfully refuses to testify violates confrontation clause); Commonwealth v. Duval, 307 A.2d 229 (Pa. 1973).

In Namet v. United States, 373 U.S. 179 (1963), the United States Supreme Court recognized two distinct grounds for a finding of reversible error resulting from a witness's assertion of the Fifth Amendment. First, "error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege." Second, there is reversible error where "inferences from a witness' refusal to answer add[] critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudice[] the defendant." Id. at 186-88. See also United States v. Victor, 973 F.3d at 979; United States v. Coppola, 479 F.2d 1160. In Pennsylvania, this error has been deemed sufficiently serious to require a new trial without regard to harmless error analysis. See, e.g., Commonwealth v. Wright, 321 A.2d 625.

It is difficult to envision a case in which the actions of the prosecutor could be more deliberate and egregious. From the very beginning, the prosecutor was on express notice that the co-defendant would refuse to testify; yet he manipulated the trial in such a way as to call the co-defendant to the stand on three separate occasions with the predictable result of an assertion of the Fifth Amendment and a refusal to testify.[2]

_____

[2]The Superior Court's assertion that the co-defendant did not state at his sentencing that he would refuse to testify if called again is factually incorrect; at that proceeding, both the co-defendant and his lawyer told the court that he would not testify. N.T. Sentencing, June 1, 10-11. And, of course, he had already twice invoked the Fifth Amendment before the jury.

The prejudice that flowed from this error is sufficient to overcome any harmless error argument. But even if not, as we now show, the combined harm to petitioner from this violation and the separate Confrontation Clause violation was overwhelming.

2. The Admission of the Out-of-Court Statements of the Co-Defendant Severely Prejudiced Petitioner.

The Pennsylvania courts determined that the introduction into evidence of the hearsay statements of the co-defendant Slaughter contravened Mr. Johnson's rights to confrontation of witnesses under the United States Constitution. The trial court had permitted the Commonwealth to introduce two hearsay statements of the co-defendant that directly implicated Mr. Johnson in the shooting: the statement allegedly given to a police detective after the first trial and statements made by Slaughter at his sentencing. In neither situation did Mr. Johnson have the opportunity to cross-examine Slaughter and, given Slaughter's consistent refusal to answer any questions (by the prosecutor, defense counsel or the court) on the substance of these statements, confrontation rights were plainly violated. See, e.g., Crawford v. Washington, 541 U.S. 36 (2004); Lilly v. Virginia, 527 U.S. 116 (1999).[3]

The standard for determining harmless error in the habeas context is well established. This Court must grant the writ if it finds that the constitutional errors at the trial had a cumulative "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619 (1993). *See also,* Fry v. Piller, 551 U.S. 112 (2007); Wood v. Ercole, 644 F.3d at 94, n.9. If the court believes the evidence evenly balanced on the prejudice question,

_____

[3]The trial court determined that Slaughter was "subverting justice." N.T. June 1, 57. There was no evidence and the court did not find any involvement of Mr. Johnson in Slaughter's refusal to testify.

it must grant the writ. O'Neal v. McAnninch, 513 U.S. 432, 435 (1995). The court must consider the importance of the inadmissible evidence, whether it was cumulative, presence of corroborating evidence, whether any cross examination was effectuated, and the overall strength of the prosecution's case. Delaware v. Van Arsdall, 475 U.S. 673 (1986).

On all of these factors, the error was highly prejudicial. Notably, the state courts failed to consider a number of critical factors, all of which demonstrate the severely prejudicial impact of these statements, and failed as well to consider well settled law on the prejudice caused by the introduction of the hearsay statements of a co-defendant who has already been convicted of the crime in question.

First, the Superior Court failed to recognize the depth and pervasiveness of the related constitutional violations: (1) that the trial court permitted the prosecution to present a witness to the jury when the prosecutor knew he would assert a Fifth Amendment claim and refuse to testify, and (2) that the prosecution was permitted to introduce the statements made by Slaughter to the detective and his testimony at sentencing acknowledging those statements. These errors allowed the jury to hear that a co-defendant, who had already been convicted of the crime, had named Johnson as the actual shooter. Further, the trial court expressly stated to the jury that Slaughter was "trying to undermine the truth-seeking process of the Commonwealth trying to bring some justice. . ." N.T. June 2, 84. That is, he was using the Fifth Amendment as a shield to do so, thus directly suggesting that the jury assume wrongdoing by Mr. Johonson by "the innuendo of guilt by association."

Courts have found reversible error in situations where only one of these violations occurred. Thus, where a prosecutor calls a witness with knowledge that he will refuse to testify

and/or take the Fifth Amendment in front of the jury, the prejudice requires a new trial, even without the introduction of accusatory hearsay statements. See e.g., Namet v. United States, 373 U.S. 179 (reversal required where prosecutor calls witness who is closely associated with the defendant and who will invoke a testimonial privilege or where the inferences that normally arise from a refusal to testify adds significant weight to the case.

Second, the United States Supreme Court has ruled that the use of a co-defendant's admission that contains accusations against a defendant is so prejudicial that even a cautionary instruction is insufficient to cleanse the prejudice. Bruton v. United States, 391 U.S. 123, 135 (1968)( "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored"). See also, Cruz v. New York, 481 U.S. 186 (1987)(describing the devastating impact of this type of testimony). Of course, in the Bruton line of cases, there is at least an instruction to the jury that the evidence is not admissible against the defendant; here, by sharp contrast, the evidence was introduced *directly* against Mr. Johnson as substantive evidence of his guilt.

Third, the Commonwealth spent significant trial time in eliciting the inadmissible evidence. Over two days (half the time for the prosecution case), and with a number of witnesses, the prosecution adroitly, though entirely improperly, drew a picture of a convicted co-conspirator who had direct knowledge of Mr. Johnson's "guilt" and who had given a formal statement to that effect to a detective, now invoking the "Fifth" to suppress critical evidence. Not surprisingly, the prosecutor focused on this evidence in his closing argument, stressing the fact that a convicted co-defendant and conspirator had both confessed to the crime, had directly

16

implicated Mr. Johnson, and now, like a "snake," was trying to protect him. N.T. June 2, 219, 228. The co-defendant's statement was both strong independent evidence of guilt and was necessary for a conviction given the serious impeachment of the prosecution's other witnesses.

The courts have regularly held that a prosecutor's reliance on inadmissible evidence in closing argument is a significant factor against a finding of harmless error. See, e.g., Clemmons v. Mississippi, 494 U.S. 738, 753 (1990)(under constitutional harmless error standard); Merolillo v. Yates, 663 F.3d 444, 456 (9th Cir. 2011)(expert testimony relied upon in closing argument; habeas writ granted); Hodges v. Epps, 648 F.3d 283 (5th Cir. 2011)(in habeas context, this fact created "grave doubt as to the harmlessness" of the error); Lambert v. Beard, 633 F.3d 126, 135 (3d Cir. 2011)(habeas context); Carriger v. Stewart, 132 F.3d 463, 482 (9th Cir. 1997)(same).

Fourth, there is no basis to conclude that this evidence was "merely cumulative" of other evidence or that the other evidence was overwhelming. The only other evidence linking Mr. Johnson to the shooting was the highly impeached and inconsistent testimony of two admitted prostitutes and long term drug addicts. Both witnesses had initially stated to detectives (Bowens on two occassions) that they did not know anything about the incident. N.T. May 28, 217-219; 238; May 29, 66. Ms. Bowens was impeached by criminal convictions and her probation and bench warrant status at the time of the incident. Further, her testimony was inconsistent with the ballistics evidence and was inherently implausible given the time and location of the event. As the defense argued, she was 600 feet from the shooting (and even the prosecutor conceded that she placed herself no closer than 300 feet from the shooting), on a dark street, N.T. June 2, 209, and she saw the incident for only a mini-second. N.T. May 29, 22-23. And, of critical significance, Ms. Bowens (who was a fully cooperative Commonwealth witness) testified that

17

given all of the circumstances, she could not be sure it was Mr. Johnson whom she saw at the victim's car. N.T. May 29, 22-23; 27-45.[4] Indeed, Ms. Bowens stated that her cocaine use caused distortions to her observations. N.T. May 28, 236.

Ms. Williams was subjected to similar impeachment. She had also told detectives that she had no knowledge of the incident and she was also the beneficiary of assistance from the Commonwealth. She was a long time prostitute and cocaine addict (with a *50 bag a day* habit), and had a criminal record, including being wanted on a bench warrant at the time of the incident. Her story, too, was inconsistent with the physical facts and location. And, as in the case of Ms. Bowens, Ms. Williams testified that *she saw the shooting only at a glance and for a "mini-second."* N.T. May 29, 113.

Fifth, on the issue of who was at the location, the jury heard testimony from another eyewitness, Debra Bryant, that Mr. Johnson was not at the car at the time of the shooting. N.T. June 2, 95. No other evidence tied Mr. Johnson to the crime and, in particular, the forensics and physical evidence was entirely inconclusive. Mr. Johnson turned himself into police as soon as he heard that he was a suspect in this case.[5] In this context, the statement of a convicted co-defendant directly asserting the guilt of the defendant, and introduced under circumstances in which the jury actually observed him obstreperously refusing to testify and asserting the Fifth

---

[4]The Superior Court's assertion that Bowens was "unwavering" in her identification of Mr. Johnson, Opinion, at 15, n.15, is therefore factually incorrect and entitled to no deference.

[5]The police investigation resulted in the seizure of a white "T" shirt that they believed may have been worn by the assailant. The defense requested DNA testing of any hairs found on the shirt, but this was not done on the ground that the hair had no roots that could be tested for DNA. N.T. June 1, 131-146. Undersigned counsel is currently investigating the availability of post-conviction DNA testing.

18

Amendment, cannot be considered "merely cumulative" to thoroughly impeached eyewitness testimony.

Finally, there is no need for speculation on this issue since the record conclusively demonstrates that the error was prejudicial. *At the first trial, where both Ms. Bowens and Ms. Williams testified against appellant, and where the rest of the prosecution's case was the same as the second trial - - except for the hearsay statements of the co-defendant - - the jury acquitted Mr. Johnson of first degree murder and could not reach a verdict on the other charges, including third degree murder.* N.T. September 19, 20, 21, 24, 2007. At the second trial, where the only difference in the Commonwealth's case was the inadmissible evidence, the jury returned a verdict of guilt. There could not be a more telling "acid test" on the nature of the error. Without the inadmissible evidence, the Commonwealth failed to convict and the differing verdicts of two juries uniquely demonstrates the prejudicial nature of the error. See Kennedy v. Lockyer, 379 F.3d 1041, 1056, n.18 (9th Cir. 2004)(fact that first trial ended in a mistrial supports argument that the issue of guilt was very close).[6]

By any measure, the pervasive errors in compelling the co-defendant to assert his Fifth Amendment rights in front of the jury and the introduction of his hearsay accusations were highly prejudicial. In cases involving Confrontation Clause violations where the inadmissible hearsay evidence directly accusing the defendant of the crime was not the same as other properly admitted accomplice testimony, the courts have consistently found no harmless error. For example, in Adamson v. Cathel, 633 F.3d 248 (3d Cir. 2011), the trial court admitted a co-

---

[6]Indeed, the Commonwealth's evidence at the second trial regarding the witness Bowens was even weaker than it was at the first trial. At the second trial, she testified that she could not be sure if Mr. Johnson was at the scene of the shooting. N.T. May 29, 22-23; 27; 45.

defendant's statement to impeach the defendant's assertion that his own confession had been fabricated by the police. This evidence was admissible for that purpose, but the court did not provide a limiting instruction as to the use of the statement, thereby permitting the jury to use it as substantive evidence of guilt. The Third Circuit granted the writ, finding no harmless error notwithstanding the fact that the defendant had *confessed* to the crime. As the Court recognized, there is always "the strong potential for an accomplice's confession to unfairly infect the trial if considered as substantive evidence of guilt." Id. at 261.

In Jones v. Basinger, 635 F.3d 1030 (7th Cir. 2011), in a remarkably similar case, the Court had "little doubt," id., at 1052, that testimony regarding an inculpatory statement of a co-defendant introduced in violation of the Confrontation Clause was prejudicial. The Court rejected the argument, similar to that made here by the Commonwealth, that the evidence was harmless because there was eyewitness testimony that was sufficient to show guilt beyond a reasonable doubt. As the Court noted, the eyewitness had been impeached and, as here, there was no forensic or any other evidence of guilt. Id. at 1054. Indeed, the prejudice here is even greater. In Jones, the Court gave a limiting instruction as to the use of the co-defendant's statement; here, by contrast, the statements were admitted for their full substantive impact. Jones follows a long line of cases that make clear that a co-defendant's statement implicating the defendant is highly powerful evidence. See, e.g., Douglas v. Alabama, 380 U.S. 415; Bruton v. United States, 391 U.S. 393.

In Jensen v. Romanowski, 590 F.3d 373 (6th Cir. 2009), in a sexual assault prosecution, the defendant testified as to his prior conviction for sexual assault, but the trial court also permitted a detective to provide hearsay evidence from the victim in the earlier case as to details

20

that mirrored the accusations in the case on trial. As here, the state courts found a Confrontation Clause violation, but held that the error was harmless. The Sixth Circuit granted the writ finding the evidence to be prejudicial under the <u>Brecht</u> standard. The Court recognized that there was substantial other evidence of guilt, including the fact that the defendant admitted to the prior assault, that he had trouble controlling his feelings for young women, and the testimony of the complainant, but found that the impermissible testimony was not cumulative and was highly corroborative of the state's theory. <u>See also, Slovik v. Yates</u>, 556 F.3d 747(9th Cir. 2009)(granting habeas relief where trial court disallowed evidence that prosecution witness testified falsely when he denied being on probation; no harmless error even though witness was otherwise impeached and the prosecution has two other witnesses to support the charges of assault).

Wood v. Ercole, 664 F.3d 83 (2d Cir. 2011), is yet another circuit's view that a constitutional error (admission of statement of defendant after he requested counsel) was not harmless, notwithstanding other evidence of guilt. In <u>Wood</u>, the prosecution presented two witnesses who implicated the defendant, but as here both of these witnesses, as the witnesses in the prosecution of Mr. Johnson, were "heavily impeached," <u>id.</u>, at 94, by prior criminal records, drug use, and prior inconsistent statements.

As these cases demonstrate, habeas relief has been consistently granted on Confrontation Clause grounds, even where the prosecution has presented other sufficient evidence of guilt. <u>See, also, Merolillo v. Yates</u>, 663 F.3d 444 (9th Cir. 2011)(Confrontation Clause violation by admission of hearsay statement of medical expert not harmless even though prosecution presented other expert testimony in support of its causation theory); <u>Ocampo v. Vail</u>, 649 F.3d

1098 (9ᵗʰ Cir. 2011)(no harmless error for confrontation clause violation despite eyewitness

testimony and other evidence of guilt); Sussman v. Jenkins, 636 F.3d 329 (7ᵗʰ Cir. 2011)(failure

to object to ruling disallowing evidence that complainant in sexual assault case had made a false

complaint in the past not harmless even though the complainant was extensively impeached by

other evidence); Childers v. Floyd, 608 F.3d 776, 791 (11ᵗʰ Cir. 2010)(need for "searching"

cross-examination of witness who had incentive to cooperate with prosecution); Ray v.

Boatwright, 592 F.3d 793 (7ᵗʰ Cir. 2010)(in habeas context, use of co-defendant's statement is

prejudicial Confrontation Clause error); United States v. Cabrera-Rivera, 583 F.3d 26, 36-37 (1ˢᵗ

Cir. 2009)(Confrontation Clause error not harmless where the challenged testimony was relied

upon by the prosecutor in closing argument and case was not overwhelming, notwithstanding

eyewitness testimony); Bobadilla v. Carlson, 575 F.3d 785 (8ᵗʰ Cir. 2009)(Confrontation Clause

violation not harmless even with independent evidence of the defendant's sexual assault of the

complainant).[7]

Accordingly, whether viewed as independent constitutional violations, or cumulatively,

the prejudicial impact mandates a new trial.[8]

_____

[7]The Superior Court relied solely on Commonwealth v. Romero, 722 A.2d 1014, where a
confrontation clause violation was found harmless. But the circumstances in Romero were
diametrically opposed to those in this case. In Romero, there was admissible evidence from
another co-defendant who testified as to the defendant's involvement in the crime, the defendant
had *confessed* to the crime and was reliable eyewitness testimony. Thus, the hearsay statement of
one accomplice was simply cumulative of the testimony of another accomplice and of the
confession by the defendant. Indeed, Pennsylvania courts have found prejudice in similar
circumstances. See, e.g., Commonwealth v. Markman, 916 A.2d 586, 603 (Pa. 2007)(where co-
defendant's improperly admitted statement was irreconcilable with defendant's version of event,
the error was prejudicial); Commonwealth v. Young, 748 A.2d 166, 193 (Pa. 1999)(admission of
co-defendant's statement implicating defendant; "difficult to imagine any evidence more . . .
prejudicial to a defendant").

[8]The Court should also consider any prejudice caused by the constitutional violation
discussed in the next section.

## II. Petitioner was Denied Due Process of Law and a Fair Trial when the Prosecutor Falsely Suggested that Mr. Johnson had Threatened a Commonwealth Witness

The Commonwealth sought to rehabilitate Brenda Bowens by having her testify that she was fearful and that someone in the neighborhood had made death threats because of her involvement in the case. N.T. May 28, 218-220. Because there was no evidence that Mr. Johnson made or caused these alleged threats, the trial court permitted this testimony, but only on the assurance of the prosecutor that he would not tie these threats to Mr. Johnson. The Superior Court found error in the admission of this testimony on grounds of improper "anticipatory bolstering" of the witness, but denied relief on the ground that the testimony did not directly tie Mr. Johnson to the threats.

This error was compounded by the Commonwealth's assertion that it was necessary to "preserve" Bowens' testimony in case she died before trial. N.T. May 29, at 28-29 (motion for mistrial). Once again, the implication was clear: that Mr. Johnson had made death threats to a key Commonwealth witness. Evidence regarding preservation of testimony was entirely irrelevant unless Mr. Johnson had threatened the witness (which the prosecutor conceded did not happen). The Superior Court ruled that there was no error on the grounds that the Commonwealth could have been concerned that Ms. Bowens might die because she was a prostitute and drug user. But this explanation is pure makeweight, and is belied by the prosecutor's stated reasons for offering this evidence. N.T. May 29, 28-29. Quite simply, because she was present at trial, there was no need for any reference to "preserving" her testimony. To the contrary, the only point of this evidence was that she had been threatened and that is precisely why the prosecutor proceeded in this fashion. Id.

The "explanatory" evidence directly implicated the defendant in criminal conduct; indeed, the prejudice was enhanced by virtue of the nature of the conduct - - threats to a witness.

This series of accusations was so highly prejudicial as to deny a fair trial. <u>See, e.g.</u>, <u>Gordon v.</u> <u>Kelly</u>, 2000 U.S. App. LEXIS 1507 (6th Cir. 2000)(prosecutor argued that witnesses were fearful; judge informed jury that a witness had died); <u>Commonwealth v. White</u>, 290 A.2d 246, 250-251 (Pa. 1972)(evidence of effort to interfere with juror, with no proof that defendant "embrace[d]" that effort, prejudicial and requires a new trial); <u>Commonwealth v. King</u>, 689 A.2d 918, 923 (Pa. Super 1997)(affirming pre-trial motion in limine excluding evidence of break- in at home of witness absent of proof that defendant was involved).

## CONCLUSION

For all the reasons set forth in the Memorandum of Law, the Court should grant the Petition for Writ of Habeas Corpus.

Respectfully submitted,

David Rudovsky, Esq.
I.D. No. 15168
Kairys Rudovsky Messing & Feinberg, LLP
718 Arch Street, Suite 501S
Philadelphia, Pa 19106
(215) 925-4400

Counsel for Petitioner