# Exhibit B

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : PHILADELPHIA COUNTY
: COURT OF COMMON PLEAS
:
VS. : NO. CP-51-CR-1202272-2005
:
WILLIAM R. JOHNSON :

**FILED**

**FEB 0 5 2010**

**Criminal Appeals Unit
First Judicial District of PA**

OPINION

PROCEDURAL HISTORY

Defendant, William R. Johnson and Mumin Slaughter, were charged by

Philadelphia authorities with murder, generally, criminal conspiracy, and possessing

instruments of crime, generally. Both men were tried jointly before this Court and a jury

in 2007. Although the jury reached a verdict with respect to Mr. Slaughter, it could not

do so with respect to defendant and a mistrial was declared. Defendant was retried before

a jury in late May/early June of 2009. On June 3, 2009, the jury found defendant guilty

of third-degree murder, criminal conspiracy, and possessing instruments of crime,

generally. Sentencing was deferred until August 6, 2009, on which date defendant

received an aggregate sentence of thirty to sixty years imprisonment.

Following the imposition of sentence defendant filed a notice of appeal and a

requested Pa.R.A.P 1925(B) statement of matters.

FACTUAL HISTORY

On August 26, 2005, shortly after 2:00 a.m., Philadelphia Police Officer Vincent

LaBrice received a radio call directing him to go to 20th Street and Cecil B. Moore

1

Avenue to investigate a report of a shooting.  Upon arrival in that general area, the officer observed a car resting against a telephone pole located at 20th and Turner Streets.  Inside the car, he saw a male slumped over the steering wheel. Further investigation revealed that the male had been shot and though still alive, he was unresponsive.  Another officer soon arrived and assisted Officer LaBrice in removing the male from the car. Officer LaBrice then discovered that the male was an off-duty police officer who was later identified as Terrence Flomo.  An ambulance arrived shortly thereafter and took Mr. Flomo to a nearby hospital where he was pronounced dead.

An autopsy performed on Mr. Flomo's body revealed that he died as a result of having suffered three gunshot wounds that caused damage to his right arm, liver, lungs, and heart.  The manner of death was homicide.

Two individuals witnessed the shooting, Brenda Bowen and Nora Williams, two prostitutes who were working in the area that night.  According to Ms. Bowen, Mr. Flomo drove up and called out to her.  Ms. Bowen, who had just finished with a customer and was addicted to crack cocaine at the time, waved him off because she was on her way to a crack house to smoke crack she had just purchased with the money she just earned. Prior to going to the crack house, Ms. Bowen saw defendant and Mr. Slaughter, both of whom she knew for some time and from whom she often purchased drugs, and told them that Mr. Flomo was trying to pick her up.  Both men immediately began walking in the direction where Ms. Bowen had seen Mr. Flomo.

When Ms. Bowen arrived at the crack house, she looked back at Mr. Flomo's vehicle and saw Slaughter and defendant standing next to the car; defendant was on the passenger side and Slaughter by its driver's side window.  Ms. Bowen next saw several

flashes emanating from inside the car and heard gunshots.  She immediately began banging on the door of the crack house begging to be let inside. While doing so, she heard another gunshot.

Ms. Bowen was eventually interviewed by the police but denied knowing anything about the incident.  On September 8, 2005, however, Ms. Bowen agreed to a second interview after being advised by family members that she had to go to the authorities because her life was in danger.  During this interview, Ms. Bowen implicated defendant and Slaughter in the crime and identified photographs depicting the two men.

Just prior to the shooting, Ms. Williams was with a customer when she saw Ms. Bowen argue with a man in a car after which she walked up to defendant and Slaughter and spoke to them for about a minute before walking away. The driver of the vehicle also left.

Shortly thereafter, Ms. Williams saw the car driven by the man who had been arguing with Ms. Bowen return.   When it did so, defendant and Slaughter, both of whom were carrying guns, ran up to the vehicle.  Defendant went to the passenger side of the vehicle and Slaughter to the driver's side.  Ms. Williams then heard the sound of gunfire coming from inside the car.  When it stopped, both men fled.

Ms. Williams, like Ms. Bowen, initially told police that she had no information about the shooting.   She, however, was interviewed a second time and identified defendant and Slaughter as the individuals who shot Mr. Flomo.

In addition to Ms. Bowen and Ms. Williams, the Commonwealth called Slaughter to testify.  Slaughter, who initially agreed to testify in exchange for a reduced sentence, refused to testify upon taking the witness stand.  As a consequence, his statement, which

3

he adopted during an in camera hearing, was read to the jury. In that statement, Slaughter stated that he and defendant were selling drugs when Brenda Bowen walked up and complained about a guy in a green car. Soon therafter, when the same car stopped nearby, defendant ran up to the car and began shooting at the driver through the passenger window.

Other testimony included evidence that defendant had ties to the area where the killing occurred and that following the killing, he and Slaughter abandoned the neighborhood.

DISCUSSION

In his first three issues, defendant asserts that this Court committed an abuse of discretion by permitting the Commonwealth to have read into evidence the out-of-court statement Slaughter gave to police. Defendant argues that by permitting the Commonwealth to present Slaughter's statement to the jury, this Court violated rules prohibiting the introduction of hearsay testimony and defendants right of confrontation guaranteed under both the Federal and State Constitutions because Slaughter refused to answer any questions posed by defense counsel during cross-examination. In a related claim, defendant argues that this Court erred by permitting Slaughter to appear before the jury and invoke his right not to incriminate himself pursuant to the Fifth Amendment of the United States Constitution. According to defendant, allowing Slaughter to invoke the Fifth Amendment before the jury deprived him of due process of law and his right of confrontation.

By way of background, as noted above in the Procedural History, Slaughter was convicted of third-degree murder and other related offenses following the first trial held

in this matter. He thereafter received a sentence of imprisonment of twenty-five to fifty years. Subsequent thereto, Slaughter's attorney contacted the prosecutor and advised him that Slaughter would cooperate with and testify for the Commonwealth at defendant's retrial if the Commonwealth would agree to allow this Court to vacate Slaughter's sentence and allow him to testify for the Commonwealth. Slaughter's attorney believed that if Slaughter cooperated, he might receive a sentence less than the one originally imposed on him. The prosecutor agreed and this Court vacated Slaughter's sentence. Slaughter, however, reneged when it came time to testify, invoked the Fifth Amendment, and refused to answer any questions about defendant's involvement in the incident posed to him by either the prosecutor or defense counsel. N.T. 5/29/09, 139-146; 6/1/09, 11-16. After Slaughter refused to answer any more questions, the Commonwealth moved to have Slaughter sentenced immediately and a sentencing hearing commenced outside the presence of the jury.

During that hearing, Slaughter acknowledged that his signature appeared on written statement he gave authorities after he agreed to cooperate. N.T.S.H 6/1/09, 8.[1] When the sentencing hearing ended, Slaughter was placed back on the witness stand before the jury at which time he again refused to answer any questions. N.T. 6/1/09, 35-55.[2] Following this, the detective who interviewed Slaughter read Slaughter's statement into evidence. N.T. 6/1/09, 64-83.

Upon further review of this issue, the contents of Slaughter's statement should not have been allowed in evidence because they constituted inadmissible hearsay and their introduction violated defendant's right of confrontation. Although a prior inconsistent

---

[1] Notes of Testimony, Sentencing hearing.
[2] Slaughter has yet to be resentenced.

statement of a witness may be admitted as substantive evidence, Commonwealth v. Lively, 610 A.2d 7 (Pa. 1992); Commonwealth v. Brady, 507 A.2d 66 (Pa. 1986), to be admissible as such, the maker of the statement must testify and be available for cross-examination  Commonwealth v.  Sholcosky, 719 A.2d 1039, 1043 (Pa. 1998); Brady, 507 A.2d at 69; Pa.R.E. 803.1(1).  Here, Slaughter's obstreperousness and refusal to answer any questions deprived defendant of his right to cross-examine him.  Thus, the statement should not have been admitted in evidence.  Nevertheless, it is submitted that a new trial is not warranted because any error resulting from the introduction of the statement was harmless.

The facts of the instant matter mirror those in the case of Commonwealth v. Romero, 722 A.2d 1014 (Pa 1999), wherein a witness who had given a statement implicating the accused refused to testify about the accused's role in the crime thereby making himself unavailable for cross-examination.  In spite of the witness's refusal to be examined, the trial court permitted the Commonwealth to read the witness's statement into evidence as substantive evidence pursuant to Brady, supra.

The Pennsylvania Supreme Court held that the trial court erred by allowing the jury to hear the contents of the statement given by the recalcitrant witness because the Brady requirement that the witness be available for cross-examination had been violated and the accused's right of confrontation was denied him.  The Supreme Court, however, denied the accused relief after finding the error harmless because the erroneously admitted evidence mirrored other properly admitted evidence.  Romero, 722 A.2d at 1019. As propounded by the Supreme Court in Romero, the harmless error test is as follows:

> In order for an error to be deemed harmless, an appellate court must determine that the error could not have contributed to the verdict. Commonwealth v. Story, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978). Under this standard, this Court has considered an error to be harmless where the improperly admitted evidence is merely cumulative of substantially similar, properly admitted evidence. Commonwealth v. Foy, 531 Pa. 322, 327, 612 A.2d 1349, 1352 (1992).

Romero, 722 A.2d at 1019.

Instantly, a review of the record indicates that the information disseminated to the jury from Slaughter's statement was duplicative and cumulative of the testimony provided by Ms. Bowen and Ms. Williams, both of whom directly implicated defendant in the killing of Mr. Flomo. Thus, despite the fact that the introduction of Slaughter's statement implicated defendant's Sixth Amendment right, no relief is due because the error was clearly harmless. See Commonwealth v. Jones, 542 Pa. 464, 668 A.2d 491, 506 (Pa. 1995) ("[A] violation of a defendant's right to confront witnesses against him may constitute harmless error if the admission could not have influenced the outcome of the case.").

Defendant's assertion that his rights were violated when Slaughter invoked his Fifth Amendment right before the jury also should be found meritless. A review of the record demonstrates that trial counsel did not contest the fact that Slaughter did not have a Fifth Amendment right. Thus, the issue is not cognizable on appeal pursuant to Pa.R.A.P. 302(a) which deems waived any issue raised for the first time on appeal.

In the next several issues, defendant raises several claims involving the admission and exclusion of evidence. These claims are governed by the following standards. "Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." Commonwealth v. Cooper, 941 A.2d 655, 667 (Pa. 2007). Evidence which makes the

existence or non-existence of a material fact more or less probable is admissible, subject to the value weighing which attends all decisions of admissibility. <u>Commonwealth v. Dillon</u>, 925 A.2d 131, 136 (Pa. 2007). Where the trial court has indicated the reason for its decision to admit challenged evidence, the scope of review is limited to an examination of the stated reason. <u>Commonwealth v. Minerd</u>, 753 A.2d 225, 229 (Pa. 2000). An abuse of discretion "is not merely an error of judgment," but a ruling that is "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." <u>Commonwealth v. Chambers</u>, 685 A.2d 96, 104 (Pa. 1996).

Defendant first argues that this Court committed an abuse of discretion when it sustained a Commonwealth objection posed to a Commonwealth witness during cross-examination which asked the witness if Brenda Bowen was honest. Defendant has failed to provide citation to the record where the objection and this Court's ruling appear. As such, it is suggested that the claim be deemed waived as defendant's lapse has made it impossible for this Court address the claim. <u>See Commonwealth v. Gooding</u>, 818 A.2d 546, 552 (Pa. Super. 2003) (indicating that court is not obliged to scour record for alleged error). Despite defendant's lapse, a general review of the claim follows.

The law provides that the scope and limits of cross-examination rest within the discretion of the trial court whose decision thereon will not be reversed absent an abuse of that discretion. <u>Commonwealth v. Rivera</u>, 983 A.2d 1211, 1230 (Pa. 2009). The scope of cross-examination include, "inferences, deductions, or conclusions which may be drawn therefrom, which explain or destroy the effect of direct testimony." <u>Commonwealth v. Nunn</u>, 947 A.2d 756, 762 (Pa. Super. 2008).

Here, defendant is not entitled to any relief because the question posed to the witness was beyond the scope of the direct examination which concerned the actions of defendant the night of the incident and following the crime. Moreover, the question

8

sought to develop his own defense.  Brenda Bowen's character traits were not discussed during direct examination and therefore, no abuse of discretion occurred. It is noted that if defendant wished to present witnesses during his defense to give their opinion of Ms. Bowen's honesty, nothing prevented him from doing so.  See Commonwealth v. Schmidt, 263 A.2d 382 (Pa. 1970)  (trial court did not abuse its discretion by limiting scope of cross-examination where obvious purpose of questions posed was to develop accused's case).

Next, defendant contends that this court erred by permitting the Commonwealth to introduce evidence showing that defendant and Slaughter were drug dealers. Defendant claims that the introduction of that evidence and testimony violated Pa.R.E. 404 and defendant's right to due process of law under both the State and Federal Constitutions. Defendant has failed to provide citations to the record where the offending testimony can be found and thus, the issue should be deemed waived.  Nevertheless, a review of the claim follows.

Other crimes evidence is admissible as follows:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. See Pa.R.E. 404(b)(1); see also Commonwealth v. Fisher, 564 Pa. 505, 769 A.2d 1116, 1128 (Pa. 2001), cert. denied 535 U.S. 906, 122 S. Ct. 1207, 152 L. Ed. 2d 145 (2002). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, identity or intent to commit the offense charged. See Pa.R.E. 404(b)(2); see also Stallworth, 781 A.2d at 118.

Commonwealth v. Malloy, 856 A.2d 767, 775 (Pa. 2004).

The evidence relating that defendant was involved in the sale of drugs was admitted in evidence to prove identity and opportunity to commit the crime.  One of the

issues at trial was whether Ms. Bowen's, and Ms. Williams' identification of defendant was correct and whether defendant could be tied to the area where the crime occurred. Both women knew defendant as a drug dealer from the neighborhood and a third witness testified that defendant sold drugs at the location of the killing. Thus, the introduction of the testimony was proper and did not amount to an abuse of discretion. In any event, any prejudice inuring from the introduction of the testimony was ameliorated by this Court's instruction to the jury advising it that the complained of testimony was presented solely to prove identity and that the jury should not consider the testimony as showing that defendant was a person of bad character or had criminal tendencies. N.T. 6/2/09, 246-247. See Commonwealth v. Gelber, 594 A.2d 672, 680 (Pa. Super. 1991) ("Cautionary instructions may suffice to eradicate any prejudice which might result from reference to prior criminal activity by the defendant, Commonwealth v. Morris, 513 Pa. 169, 175, 519 A.2d 374, 376 (1986)"). Because there is nothing indicating that the jury did not follow this instruction, relief should be denied with respect to this claim.

In the next two claims, defendant argues that this Court erred by permitting the Commonwealth to introduce evidence that Brenda Bowen gave police a statement that was consistent with her trial testimony because someone in the neighborhood had threatened her and this Court erred in denying a motion for a mistrial after the Commonwealth elicited from Ms. Bowen that one of the purposes in having her testify at defendant's preliminary hearing was to preserve her testimony in the event she was killed. In both instances, defendant asserts that the testimony should have been excluded because it permitted the jury to infer that defendant may have had a connection to the threats and might try to kill her. Defendant waived review of this claim by failing to provide citation to the record where these alleged errors appear. Nevertheless, a general review of them shows that they are meritless.

10

The remedy of a mistrial is required "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." Commonwealth v. Johnson, 719 A.2d 778, 787 (Pa. Super. 1998) (*en banc*), quoting Commonwealth v. Montgomery, 533 Pa. 491, 626 A.2d 109, 112-113 (Pa. 1993).  The decision granting or denying a motion for a mistrial is reviewed under an abuse of discretion standard.  Commonwealth vs. Lettau, 955 A.2d 360 (Pa. Super. 2008), reversed on other grounds, 2009 Pa. Lexis 2796 (Pa. 2009).

Here the testimony was introduced to explain why Ms. Bowen initially had been reluctant to cooperate with the police.  Testimony is admissible for such a purpose. See Commonwealth v. Collins, 702 A.2d 540, 544 (Pa. 1997).  Moreover, because the threats were not traced to defendant and it was not claimed that the complained of testimony established defendant's guilt, any prejudice resulting from the testimony would have been minimal.  Accordingly, for these reasons, defendant's claims with respect to these issues should be denied.

Finally defendant claims that the preceding claims of error "independently and in their cumulative effect denied defendant a fair trial.  Pa.R.A.P 1925(b) Statement, Issue 8.  The law is clear that no number of failed claims entitle a defendant to relief. Commonwealth v. Cox, 983 A.2d 666, 705 (Pa. 2009).  Accordingly, defendant should be denied relief with respect to this claim.

CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

By the Court,

DATE: 2\5\10

Honorable Jeffrey P. Minehart

11