IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM JOHNSON, | : | |
|     Petitioner, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 12-5156 |
| | : | |
| MARIROSA LAMAS, et al., | : | |
|     Respondents. | : | |

## ORDER

**AND NOW**, this   30TH   day of June, 2014, upon careful and independent consideration of the petition for writ of habeas corpus, the parties' briefs, United States Magistrate Judge Elizabeth T. Hey's Report and Recommendation ("R & R"), and Petitioner William Johnson's objections to the R & R, it is **ORDERED** that:

(1) The R & R is **APPROVED** and **ADOPTED as to the outcome and analysis of each claim**. Therefore, the petition for writ of habeas corpus is **DENIED** without an evidentiary hearing.

(2) Further, as to the certificate of appealability, the certificate **SHALL ISSUE on Claim Two: Denial of Sixth Amendment Right to Confrontation**.

Both the R & R and the Pennsylvania Superior Court's Opinion correctly recognize that a confrontation error occurred during Johnson's trial when the inculpatory out-of-court statement of Mumin Slaughter—Johnson's co-defendant—was read to the jury after Slaughter refused to testify. Slaughter refused to answer questions posed by defense counsel and this refusal effectively denied Johnson his constitutional right to cross-examine and confront Slaughter in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). The outcome of this petition thus hinges on whether this constitutional error was harmless or whether it resulted in actual prejudice to Johnson.

"'[A]n error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict.'" *Adamson v. Cathel*, 633 F.3d 248, 259 (3d Cir. 2011) (alteration in original) (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)). The Third Circuit instructs that

> if we have grave doubt about whether the error had substantial and injurious effect or influence in determining the jury's verdict, we must conclude that the error was not harmless. The Supreme Court has cautioned that [t]he uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict . . . .

*Adamson*, 633 F.3d at 260 (citation omitted) (internal quotation marks omitted). I agree with the R & R that Johnson was not prejudiced by the admission of Slaughter's statement. However, although I do not have "*grave* doubt" that Slaughter's statement had a substantial and injurious effect on the jury verdict, there may be *some* doubt that this statement did so, given the significant impeachment of the Commonwealth's two key eyewitnesses[1] and the lack of physical evidence connecting Johnson to the murder. This question thus merits review by the Third Circuit, because reasonable jurists may disagree on whether Johnson was actually prejudiced by the admission of Slaughter's statement and because Johnson has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Therefore, a certificate of appealability **SHALL ISSUE for Claim Two**.

s/Anita B. Brody<br>
_____<br>
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:    Copies **MAILED** on _____ to:

---

[1] The Commonwealth's two eyewitnesses—Nora Williams and Brenda Bowens—were impeached on multiple grounds, including by evidence that: (1) both witnesses were prostitutes who admitted to significant drug use and addiction at the time of the incident, N.T. May 28, 231; N.T. May 29, 51; 102; (2) Williams admitted to using crack before the incident and that she had a 50 bag/day crack habit, N.T. May 29, 77; 102; (3) both witnesses faced outstanding bench warrants at the time when the police brought them in for questioning about the incident, N.T. May 28, 238; N.T. May 29, 98; (4) both witnesses initially denied knowing anything about the incident, N.T. May 28, 274-75; N.T. May 29, 65; (5) both witnesses admitted they only "glanced" at the shooting incident (which occurred around 2 a.m.) for about a "mini second," N.T. May 28, 263; N.T. May 29, 113; 115-16; (6) Bowens conceded that she could not be positive that Johnson committed the shooting, N.T. May 29, 22-23; 45-46; and (7) Bowens witnessed the shooting from a significant distance, approximately 400 feet away from the intersection where it allegedly occurred. N.T. May 28, 253-54; 260-62; 270; N.T. June 1, 123; 128.