# Exhibit A

Stipulations to Habeas Corpus Relief

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM JOHNSON,** | : | |
| **Petitioner** | : | |
| | : | **No. 2:12-cv-05156-AB** |
| v. | : | |
| | : | |
| **BOBBI JO SALAMON, et al.,** | : | |
| **Respondents** | : | |

**STIPULATION TO HABEAS CORPUS RELIEF**

Petitioner William Johnson and Respondents, through their respective counsel, hereby stipulate that Mr. Johnson is entitled to relief under Federal Rule of Civil Procedure 60 from this Court's judgment denying his Petition for Writ of Habeas corpus and that he is entitled to relief on Claim II of his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.

**PURPOSE OF STIPULATION**

The parties agree that the terms of this Stipulation are in their respective interests. This Stipulation reflects the agreement of the parties that Mr. Johnson's prior habeas claims did not receive a fair and full hearing due to the Commonwealth's concealment of highly relevant evidence on the pivotal issue of harmless error and, therefore, this Court's judgment denying habeas relief should be opened and relief granted. The undisputed facts to which the parties stipulate demonstrate that Mr. Johnson's right to confrontation of witnesses was violated and that the error was not harmless under governing habeas standards.

**STIPULATED FACTS**

1. Petitioner William Johnson is a Pennsylvania state prisoner currently serving a sentence of 30–60 years at the State Correctional Institute at Rockview following a June 26, 2009

conviction for third-degree murder and related charges in the Philadelphia County Court of Common Pleas.

2.     Johnson was initially tried with his co-defendant, Mumin Slaughter, in 2007. The jury acquitted both men of first-degree murder but could not reach a unanimous verdict for Johnson on a charge of third-degree murder. The jury convicted Slaughter of third-degree murder and conspiracy.

3.     Slaughter then sought a deal for a more favorable sentence in exchange for his testimony against Johnson. However, after providing an inculpatory statement, Slaughter refused to testify at Johnson's 2009 re-trial and asserted that his statement was false and was given only to induce Johnson to plead guilty. Notwithstanding notice of the refusal to testify before the trial, the Commonwealth was allowed to repeatedly introduce Slaughter's out-of-court statement without any opportunity for cross-examination.

4.     On appeal, the Pennsylvania Superior Court ruled that the admission of the statement violated Johnson's constitutional right to confrontation, but the court found that the error was harmless. *Commonwealth v. Johnson*, 29 A.3d 821 (Pa. Super. Apr. 1, 2011) (table). The Supreme Court of Pennsylvania denied a petition for allowance of appeal. *Commonwealth v. Johnson*, No. 405 EAL 2011 (May 16, 2012).

5.     On September 10, 2012, Johnson filed a counseled petition for habeas corpus in this Court that alleged, among other claims, that the admission of Slaughter's statement violated the Confrontation Clause and that he was prejudiced by the constitutional violations. In support, he argued the statement was the centerpiece of the Commonwealth's proof at the re-trial; that the two Commonwealth identifying witnesses, Brenda Bowens and Nora Williams, had serious credibility issues; that the Superior Court had unreasonably determined that Bowens was

"unwavering" in her identification of Johnson; and that the only difference in the Commonwealth evidence at the second trial was Slaughter's inadmissible testimony. *See* ECF No. 1; *see also Johnson v. Lamas*, 850 F.3d 119 (3d Cir. 2017).

6.      The Commonwealth defended the state court judgment on the ground of harmless error. The Commonwealth asserted that the witnesses Bowens and Williams "stood up remarkably well to defense counsel's vigorous and tenacious cross-examination," and that Bowens "unequivocally identified" Johnson. *See* ECF No. 9.

7.      On December 18, 2013, Magistrate Judge Elizabeth T. Hey recommended that the petition be denied and that no certificate of appealability (COA) issue. ECF No. 11.

8.      This Court adopted the Magistrate's Report and Recommendation but granted a COA on the Sixth Amendment violation. ECF No. 16. This Court explained "although [it did] not have '*grave* doubt' that Slaughter's statement had a substantial and injurious effect on the jury verdict, there may be *some* doubt that this statement did so, given the significant impeachment of the Commonwealth's two key eyewitnesses and the lack of physical evidence connecting Johnson to the murder." ECF No. 16.

9.      On Johnson's appeal, the Commonwealth argued that Bowens and Williams were not meaningfully impeached at trial and asserted that "Bowens unequivocally identified Johnson and Slaughter in her statement to police, at the preliminary hearing, and at trial." *Johnson*, 850 F.3d 119, Appellee's Br. at *29-31.

10.     On March 3, 2017, the Court of Appeals agreed that Johnson's confrontation rights were violated but explained that "because Slaughter's statement was cumulative of Bowens's and Williams's largely consistent identifications, the Pennsylvania Superior Court did not act unreasonably in concluding that the error was harmless." *Id.* at 137. The Court denied Johnson's

petition for rehearing on April 12, 2017.

11.     On February 20, 2018, the United States Supreme Court denied Johnson's petition for certiorari. *Johnson v. Lamas*, 138 S. Ct. 975 (2018).

12.     In 2020, Brenda Bowens, who had made a recovery from her drug addiction and had gained training and employment in the healthcare field, fully recanted her trial testimony and asserted that she was threatened and pressured by the investigating detectives into providing evidence against Johnson.

13.     Based on that recantation, Johnson filed a PCRA petition in state court seeking relief from the conviction. In discovery in those proceedings, the Commonwealth produced to Johnson's undersigned counsel the District Attorney's Office's files in the criminal case.

14.     The files contained previously undisclosed evidence regarding the constitutional violations alleged by Johnson. The failure to disclose this *Brady* material before trial, and the continued failure of the prosecution's appellate, post-conviction, and federal habeas lawyers to disclose the evidence, violated Johnson's rights to due process of law. And, this suppression of favorable and impeaching evidence allowed the Commonwealth to make misrepresentations (regardless whether those misrepresentations were purposefully made) to this Court regarding the harmless error issue.

15.     The Commonwealth's failure to produce relevant impeachment evidence regarding Bowens and Williams and its misrepresentations to this Court present extraordinary circumstances to undermine the integrity of this Court's proceedings and raises a significant risk of injustice to Johnson. *Lazar v. Little*, No. 2:14-cv-06907-GAM, 2022 WL 3647816, at *4-5 (E.D. Pa. Aug. 24, 2022) (Commonwealth misrepresentations were extraordinary circumstance that warranted relief under 60(b)(3) and 60(b)(6)); *see also id*. at 2023 WL 2382812 (E.D. Pa. Mar. 6, 2023) (granting

habeas relief); *Satterfield v. District Attorney Philadelphia*, 872 F.3d 152, 158, 162 (3d Cir. 2017) (60(b)(6) is a catch-all provision that provides for relief from "fundamentally unjust incarceration"); *Cox v. Horn*, 757 F.3d 113, 122 (3d Cir. 2014) (60(b)(6) is appropriate in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.").

16.      In pre-trial discovery, the Commonwealth provided defense counsel with the initial statements of Bowens and Williams that denied any knowledge of the homicide. N.T. 5/28/2009, 217-19, 237-38; N.T. 5/29/2009, 51-52, 65. The Commonwealth also disclosed evidence of housing assistance that it provided to each witness following alleged threats that they received based on their cooperation with police.[1]  N.T. 5/28/2009, 225-26; N.T. 5/29/2009, 67.

17.      At trial, following Bowens' testimony that she was uncertain that Johnson was involved in the offense, the Commonwealth sought to rehabilitate her by pointing to her alleged fear. N.T. 5/29/2009, 42-44. The Commonwealth also introduced Bowens' prior inculpatory testimony and had her testify that her accusations were "the truth." *Id*. at 46.

18.      The Commonwealth relied even more heavily on Slaughter's inadmissible out of court statements which was the only evidence not presented at the first trial which resulted in a hung jury.

19.      The Commonwealth argued that the testimony of Bowens and Williams was "strong and consistent," *Johnson*, 850 F.3d 119, Appellee's Br. at *23, and was "far more

---

[1] There was no evidence that Johnson or his co-defendant ever threatened the witnesses. Defense counsel sought to exclude the threats entirely during Johnson's initial trial, explaining that the alleged threats could not "be attributed to [Johnson because], he was in custody." N.T. 9/20/2007, 100-01. The trial court agreed in part and allowed the Commonwealth to introduce testimony that the witness was threatened, but not by whom. *Id*. Johnson unsuccessfully challenged the introduction of these threats during his habeas proceedings. *See* ECF No. 1.

persuasive evidence of [Johnson's] guilt" than Slaughter's statement, ECF No. 9 at *24; *Johnson*, 850 F.3d 119, Appellee's Br. at *26. The Commonwealth claimed that Bowens was "unwavering" in her testimony and "unequivocal" in her identification "to police, at the preliminary hearing, and at trial." ECF No. 9 at *22-23 n.14; *Johnson*, 850 F.3d 119, Appellee's Br. at *30-31. Further, the Commonwealth alleged that the witnesses "stood up remarkably well to defense counsel's vigorous and tenacious cross-examination" and that each witness "explained why she had not initially told police that she had witnessed the murder." ECF No. 9 at *25; *Johnson*, 850 F.3d 119, Appellee's Br. at *29-30.

20.     These arguments were inaccurate and misleading, and the failure to produce relevant impeachment evidence regarding Bowens and Williams prevented Johnson from fully and fairly litigating the constitutional violations before this Court and the Third Circuit.

21.     First, the Commonwealth's file revealed that Bowens recanted her accusations against Johnson in February 2006, *nearly a year before his initial trial*. Bowens sent letters to District Attorney Lynne Abraham and prosecuting attorney Carlos Vega stating that she could not be a credible witness against Johnson or Slaughter, as her inculpatory statements were false and were the product of police coercion. Bowens stated that the detectives threatened her and told her what to say. She also referenced additional financial incentives for her testimony that were not disclosed at trial. Exhibit 1, Bowens 2006 Recantation Letters to DAO Officials.

22.     Second, the file contained documentary evidence that the Commonwealth provided Williams with previously undisclosed additional financial assistance in exchange for her testimony. At trial, the Commonwealth maintained it assisted Williams with housing assistance because of the alleged threats she had received. Yet, the suppressed documents show that Williams did not seek relocation until nearly a year after she claimed to have been threatened. In addition,

the documents show that Williams was provided additional housing assistance because she was having financial difficulties and had disagreements with her landlord. Exhibit 2, Williams 2007 and 2008 Relocation Assistance Letters.

23.     Third, the file contained previously undisclosed evidence that Williams had been diagnosed with a significant psychiatric disorder, had been hospitalized for her mental health issues two months before the offense, and was suffering from active hallucinations at the time she reported witnessing the shooting. Exhibit 3, Williams Competency Evaluation.

24.     The Commonwealth's argument that Bowens was "unwavering" and "unequivocal" in her identification, ECF No. 9 at *22 n.14, could not have been made or found credible if the Courts had heard that Bowens recanted her inculpatory statements before trial, informed the Commonwealth that the statements were coerced by police, requested that the prosecution investigate misconduct by the officers involved, and revealed undisclosed financial incentives that she was offered to testify.

25.     By the same token, the Commonwealth's arguments as to the reliability of Williams would have been undermined by the financial assistance she received in exchange for her testimony and evidence she was experiencing significant mental health issues, including active hallucinations, at the time she reportedly witnessed the shooting.

26.     This Court found the witnesses to be consistent with each other and sufficiently reliable to support Johnson's conviction:

> The Commonwealth's two eyewitnesses-Nora Williams and Brenda Bowens-were impeached on multiple grounds, including by evidence that: (1) both witnesses were prostitutes who admitted to significant drug use and addiction at the time of the incident, N.T. May 28, 231; N.T. May 29, 51; 102; (2) Williams admitted to using crack before the incident and that she had a 50 bag/day crack habit, N.T. May 29, 77; 102; (3) both witnesses faced outstanding bench warrants at the time when the police brought them in for questioning about the incident, N.T. May 28, 238; N.T. May 29, 98; (4) both witnesses initially denied knowing anything about the

incident, N.T. May 28, 274–75; N.T. May 29, 65; (5) both witnesses admitted they only "glanced" at the shooting incident (which occurred around 2 a.m.) for about a "mini second," N.T. May 28, 263; N.T. May 29, 113; 115–16; (6) Bowens conceded that she could not be positive that Johnson committed the shooting, N.T. May 29, 22–23; 45–46; and (7) Bowens witnessed the shooting from a significant distance, approximately 400 feet away from the intersection where it allegedly occurred. N.T. May 28, 253–54; 260–62; 270; N.T. June 1, 123; 128.

ECF No. 16, at *1 n.1.

27.     The Third Circuit was similarly misled and its ruling that the "identifications fundamentally corroborated each other on points critical to the Commonwealth's theory of the case," *Johnson*, 850 F.3d at 134, rested on false grounds due to the Commonwealth's withholding of key evidence.

28.     Johnson was prevented from fully and fairly presenting the prejudice from the Confrontation Clause violations, and he is entitled to relief under Rule 60(b)(3). *See Stridiron*, 698 F.2d at 207; *Lazar*, 2022 WL 3647816, at *4.

29.     A proposed order encompassing the terms of the Stipulation is attached for the Court's consideration.

**IT IS SO STIPULATED.**

Respectfully submitted,

/s/ Katherine Ernst

Katherine Ernst
Supervisor
Federal Litigation Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

/s/ Nilam A. Sanghvi

Nilam A. Sanghvi
Pa. Attorney I.D. No. 209989
Ryan Becker
Pa. Attorney I.D. No. 331376
The Pennsylvania Innocence Project
1515 Market Street, Suite 300
Philadelphia, PA 19102

David Rudovsky
Pa. Attorney I.D. No. 15168
Kairys, Rudovsky, Messing, Feinberg &
Lin, LLP

718 Arch Street, Suite 501S
Philadelphia, PA 19106

Counsel for William Johnson

Dated: March 9, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a copy of the foregoing to be served upon Katherine Ernst, Esq. via the Eastern District of Pennsylvania's ECF system.

*/s/ Nilam A. Sanghvi*
NILAM A. SANGHVI

Date:   March 9, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM JOHNSON,     :
Petitioner         :
            :  No. 2:12-cv-05156-AB
     V.       :
            :
BOBBI JO SALAMON, et al.,   :
Respondents       :

ORDER

AND NOW, this _____ , day of _____, 2023, upon consideration of the parties'

Stipulation to Habeas Relief, it is hereby ORDERED that:

1.  The parties' stipulation is ACCEPTED by the Court;

2.  Petitioner's Motion for Relief From Final Order and Judgment Pursuant to Federal
    Rule of Civil Procedure 60 is GRANTED;

3.  Petitioner's Petition for Writ of Habeas Corpus is GRANTED as to Claim II;

4.  Petitioner's other claims are moot and will not be further considered by this Court;

5.  The Commonwealth of Pennsylvania will be ordered to release or retry Mr. Johnson
    within 180 days;

6.  This Order will be incorporated into the Court's final order with respect to these
    habeas corpus proceedings.

IT IS SO ORDERED

BY THE COURT:


_____
Hon. Anita Brody

# Exhibit 1

Bowens 2006 Recantation Letters to DAO Officials

WJ (DAO Boxes) 003140

RECEIVED

MAR 0 8 2006

DISTRICT ATTORNEYS OFFICE 2/21/06

Dear Ms Abraham:

My name is Brenda Bowers I presently incarated at Riverside Correctional Facility. The reason I am here and were I am housed on C Unit in protective custody due to my possibly going to be a witness for Commonwealth in a homicide were a Philadelphia Police Officer was killed last summer As of today I am setting the record straight I will not be a witness, I was forced by Dectective Richard? and Dectective Thomas Augustine to give my statement or should I say they told me what to say! My

picture was all over the new's media
I was an informant for the Philadelphia
Police Department I never was and
have never planned on it. On November
18, 2005 DA Carlos Vegas told me he
was going to help me get into a
drug programs, new teeth and money in
my pocket I may be a former crack
addict have no teeth and HIV but
I'm a person with a conscience and
I am also a Human being. At the
present time I can't afford counsel
so consider this is formal notice. If I
don't receive a response by March 1st 2006
I'm going to the new's media and

WJ (DAO Boxes) 003141

WJ (DAO Boxes) 003142

new's paper. I look forward to
hearing something soon.

Respectfully

Respectfully

Brenda Bowers

WJ COPY

WJ (DAO Boxes) 003134

Dear Mr. Vega:                                    2/21/06

Please find enclosed a copy of
a recent letter which was sent to
District Attorney Lynn Abraham. I
was threaten and forced into the
statement. I will not be testifying
for the Commonwealth and I want
them to be well aware of this. Also
please find enclosed a letter which
I received from Nancy Phillips. I have
no intentions to speak with her. The
only thing I am requesting that my witness
detainer lifted so I can be released
from jail and also I hope this
would open an investigation into

the Homicide Unit and District

attorney Office.

Respectfully,

Respectfully

Brenda Bowen

WJ (DAO Boxes) 003135

# Exhibit 2

Williams 2007 and 2008 Relocation Assistance Letters

WJ (DAO Boxes) 003124

**MEMORANDUM**                                         September 11, 2007


TO:        Edward McCann, Chief, Homicide Unit

FROM:      Carlos Vega, ADA, Homicide Unit

SUBJECT:   **COMMONWEALTH V. MAURICE SLAUGHTER**
           **COMMONWEALTH V. WILLIAM JOHNSON**
           **WITNESS RELOCATION** - Nora Williams


　　　Ms. Nora Williams is a Commonwealth witness in the above-captioned case.  She is one of the witnesses who saw the defendants run up to the victim's car, try to rob him, and finally shoot him.  Ms. Nora Williams gave a full statement to the police and did testify truthfully at a preliminary hearing.

　　　On December 5, 2006, the brother of William Johnson approached Nora Williams and another eyewitness, Brenda Bowens, and told them not to come to court.  When he made this request he was armed with a gun.  The witness is willing to testify but wants to be relocated because she is afraid of retaliation.


CV:cl

*Witness previously did not want relocation, does so now.*

*Approved for relocation interview*
*EMC*
*9-11-07*

*Approves for interview.*
*JDelany 9-11-07*

WJ (DAO Boxes) 003034

**M E M O R A N D U M**                                        June 24, 2008

TO:        Edward McCann, Chief, Homicide Unit

FROM:      Carlos Vega, ADA, Homicide Unit

SUBJECT:   **WITNESS RELOCATION OF NORA WILLIAMS**
           **COMMONWEALTH V. WILLIAM JOHNSON**
           **CP-51-CR-1202272-2005**


     Nora Williams is a crucial eyewitness in the shooting death of P/O Flomo. She testified truthfully at a jury trial which led to the conviction of Mumin Slaughter. When Ms. Williams became an eyewitness in this case she had to be relocated because of threats by the above defendant's family.  It has come to my attention that she is being evicted from her apartment on July 1st.  The eviction is as a result of a change in her finances, as well as some disagreements with her landlord.

     I am requesting that she be relocated to a motel until we can secure permanent housing.


CV:cl

# Exhibit 3

Williams Competency Evaluation

**WJ (DAO Boxes) 003036**

| | MENTAL HEALTH EVALUATION | | COURT OF COMMON PLEAS<br>TRIAL DIVISION<br>ADULT PROBATION & PAROLE<br>DEPARTMENT | | |
|---|---|---|---|---|---|
| **IDENTIFYING**<br><br>**DATA** | **Name:** WILLIAMS, NORA<br>**AKA:** (WITNESS) | | **Philadelphia Police Photo<br>Number:**<br>804004 | | |
| | Date of Birth: | | **Gender:**<br><br>FEMALE | **Ethnic Group:**<br><br>AFRICAN-AMERICAN | |
| **PSYCHIATRIC**<br><br>**EVALUATION**<br><br>**ORDERED BY** | **Judge:**<br>     HONORABLE BENJAMIN LERNER | | | | |
| | **Trial Commissioner:** | | | | |
| **REASON FOR**<br><br>**EVALUATION** | [ ] Competency<br><br>[ ] Possible Commit | | [ ] Sect 17<br><br>[ ] Sect 18 | [ ] Presentence<br>Evaluation<br>[ X] Other WITNESS | |
| **PRESENT**<br><br>**OFFENSE** | Charges: COMMONWEALTH VS. MUMIN SLAUGHTER | | | Court Bill & Term:<br><br>M. C. 0509 - 1342<br><br>*Case /s: 11/14/05 -<br>306* | |
| **EVALUATION<br>PREPARED BY:** | ROBERT W.<br>STANTON, M.D.<br><br>[ X] Psychiatrist<br><br>[ ] Psychologist | Submitted:<br><br>10-20-05<br>Typed:<br><br>10-20-05 | Date<br>Evaluated:<br><br><br>10-19-05 | Date<br>Ordered:<br><br><br>10-10-05 | Listing<br>Date:<br><br><br>10-25-05 |

DIAGNOSTIC FORMULATION, SUMMARY AND RECOMMENDATIONS:     *Competent to testify<br>as witness*

PLEASE SEE REPORT.

"THIS REPORT IS CONFIDENTIAL AND MAY BE DISTRIBUTED ONLY IN ACCORDANCE WITH
SECTION III OF THE MENTAL HEALTH PROCEDURES ACT OF 1976.  IN ACCORDANCE
THEREWITH THESE REPORTS SHALL BE DISTRIBUTED ONLY TO THE HEARING JUDGE AND NO
INCULPATORY OR EXCULPATORY MATERIAL SHALL BE INCLUDED."

CONFIDENTIAL          [ ] PRISON COPY          [ ] JUDGE'S COPY

CONFIDENTIAL          [ ] DISTRICT ATTY.          [ ] DEFENSE ATTY.

**WJ (DAO Boxes) 003037**



## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COURT OF COMMON PLEAS
TRIAL DIVISION

ADULT PROBATION & PAROLE DEPARTMENT
COURT MENTAL HEALTH CLINIC
CRIMINAL JUSTICE CENTER
1301 FILBERT STREET, ROOM B-05
PHILADELPHIA, PA. 19107
(215) 683-7562  FAX (215) 683-7559

FREDERICA MASSIAH-JACKSON
PRESIDENT JUDGE

JAMES J. FITZGERALD, III
ADMINISTRATIVE JUDGE

D. WEBSTER KEOGH
SUPERVISING JUDGE

JOSEPH A. CAIRONE
COURT ADMINISTRATOR

DAVID D. WASSON, III, ESQ.
DEPUTY COURT ADMINISTRATOR
TRIAL DIVISION

ROBERT J. MALVESTUTO
CO- CHIEF PROBATION OFFICER

FRANK M. SNYDER
CO- CHIEF PROBATION OFFICER

### MENTAL HEALTH EVALUATION

SUBJECT'S NAME: WILLIAMS, NORA        SUBJECT'S AGE: 23

DATE EXAMINED:  10-19-2005

IDENTIFYING INFORMATION:

This is a court clinic psychiatric evaluation of this 23 year old single disabled African-American female with an 11th grade education who states she was born on ▮▮▮▮▮.  She is being seen at the request of Judge Benjamin Lerner ordered 10/19/05. Ms. Williams is scheduled to be a material witness in an upcoming case. The purpose of this examination is to supply a psychiatric evaluation commenting on her suicidality.

SOURCES OF INFORMATION:

Include direct examination of the individual. She was informed of the non-confidential nature of the interview and agreed to cooperate.

BACKGROUND INFORMATION:

The Subject is a native of North Philadelphia, the oldest of seven children from a working-class background whose parents separated when she was about seven years of age. She states that her mother has had long-standing psychiatric problems and has been on SSI. Her father works, but she does not know exactly where. The Subject indicates that she was sexually molested by an uncle and was sent

WJ (DAO Boxes) 003038

WILLIAMS, NORA                                    Page 2

## BACKGROUND INFORMATION cont.d

to DHS and had been in foster homes. She denies history of other
trauma. She states that she attended Benjamin Franklin High School
to the 11th grade. She has been on SSI for five years and has had no
jobs. She is single and has no dependents. She had been living in
the Witness Protection Program prior to her arrest four weeks ago.

## REVIEW OF PAST MEDICAL & PSYCHIATRIC HISTORY:

The Subject had psychiatric hospitalization (perhaps seven or
eight) since age 13. She was last in Episcopal Hospital in June of
this year and stayed there for two weeks. At that time she was
hearing voices and was on medication which she stopped three months
ago. Her pattern is to be placed on medication while hospitalized
and then to stop taking it subsequently. She denies alcohol abuse.
She states that she has used marijuana and crack cocaine on a daily
basis for at least a year. There is no history of drug or alcohol
treatment. She did have anger management in the past. She states
that her general health is good.

## MENTAL STATUS EXAMINATION:

The Subject is alert, polite and cooperative, but somewhat labile.
She is oriented as to person, place and time. Recent and remote
memory is fairly good. She denies current hallucinations, although
she did hear voices up until a few weeks ago. She currently is
receiving no medication at the Riverside Correctional Institution.
She has no well-fixed delusions. She denies current suicidal
ideation. She states that at the time she was arrested she lost her
temper and made several statements because "I didn't want to be
locked up". Fund of information is fair at best. She appears to be
the type of person who could be easily provoked. She is aware of
her current situation and is aware of the functions of a witness.
At this point, there are no psychotic symptoms which would
interfere with her capacity to function in a court of law as a
witness.

## DIAGNOSTIC FORMULATION:

Axis I:   Psychotic Disorder - NOS.
          Polysubstance Abuse/Dependence including Marijuana &
          Cocaine.

Axis II:  Deferred.

Axis III: Not known.

**WJ (DAO Boxes) 003039**

WILLIAMS, NORA                                           Page 3

## RECOMMENDATION:

The Subject is capable of functioning as a witness. She does not
appear to be suicidal at the present time. Regardless of
disposition, it is recommended that she have residential dual
diagnosis treatment and could also benefit from further anger
management.


_____
Robert W. Stanton, M.D.

RWS/ss

10-20-2005